IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2022 Session

## STATE OF TENNESSEE v. LARRY DALE PITTS

**Appeal from the Circuit Court for Rutherford County**
**No. 82534    Barry R. Tidwell, Judge**

————————————————————

### No. M2021-01334-CCA-R3-CD

————————————————————

Larry Dale Pitts, Defendant, was convicted of aggravated assault after a jury trial. The trial court denied his request for judicial diversion and sentenced him to split confinement, with one year of incarceration, and the remainder on supervised probation. He now appeals the sentencing determinations of the trial court, arguing that it abused its discretion in denying judicial diversion, denying full probation, and sentencing him to the maximum within-range sentence of six years. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Heather Parker (on appeal and at trial) and Jake Beggin (at trial), Murfreesboro, Tennessee, for the appellant, Larry Dale Pitts.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and John Zimmermann, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Rutherford County grand jury indicted Defendant for attempted first degree murder and employing a handgun during the commission of a dangerous felony after Defendant shot his next-door neighbor in the leg. The matter proceeded to a jury trial. The following facts were established at trial based on video evidence from multiple

security cameras, the testimonies of police officers, Defendant's neighbors, the victim, the victim's fiancée, Defendant, and Defendant's wife.

The victim, Daniel Dority, his fiancée, Tiffany Blalock, and their three children moved next door to Defendant and Defendant's wife, Marla Pitts, in 2016. The victim and Ms. Blalock were in their early thirties. Defendant and Mrs. Pitts were in their late fifties. Defendant carried a gun on him at all times. Both couples drank heavily and frequently and became friends. In September 2018, the neighbors had a falling out. There was conflicting testimony concerning the altercation that led to the falling out. Regardless, a nine-month feud ensued between the two households.

The neighbors found themselves to be the recipient of the other's torment. Ms. Blalock testified that Defendant called the police on them and made up lies, installed video cameras where her kids played, and made sexual remarks about her 10-year-old daughter. Defendant and Mrs. Pitts testified that the victim repeatedly insulted Defendant and threatened to hurt him.

The feud culminated on July 16, 2019. Around 2:00 p.m., the victim was mowing his lawn. While the victim was mowing, Defendant walked outside and posted a private property sign on his property nearby the victim. The men exchanged words and the conversation spiraled into an argument. Eventually, the victim returned to mowing his grass. Around 5:30 p.m., Defendant and Mrs. Pitts ate dinner and consumed "a few" beers. Defendant and Mrs. Pitts went outside and sat on their porch.

Around 9:00 p.m., while the victim was eating dinner and drinking a six-pack of beer, Ms. Blalock testified that she went outside to put away her children's bicycles. Defendant was on his porch, and Ms. Blalock was in her yard. The two insulted each other. Ms. Blalock went inside and told the victim of the argument. Ms. Blalock and the victim went outside and into the street. They began hollering at Defendant. Defendant shouted back from his porch. Mrs. Pitts yelled for everyone to return to their homes.

The argument escalated. Defendant and the victim, both intoxicated, threatened each other. The victim, standing in the street, goaded Defendant off his porch. Defendant left his porch and walked to the corner of his property near the street. Ms. Blalock went inside to call the police. Mrs. Pitts attempted to restrain Defendant. Defendant pulled out his gun and the victim turned away. Defendant shot the victim once in the leg from behind. After shooting the victim, Defendant went inside his home. Ms. Blalock testified that when she emerged from her house, she saw the victim limping around and bleeding everywhere. Another neighbor, Helen Davidson, helped Ms. Blalock stop the victim's bleeding with towels and used the victim's belt as a tourniquet.

Rutherford County Sherriff's Office Deputy Denise Smotherman and another deputy arrived and cleared the scene. The officers went to Defendant's house and found him and Mrs. Pitts sitting in the garage on a couch, heavily intoxicated. They found Defendant's gun on the kitchen counter. The officers arrested Defendant. An ambulance arrived shortly thereafter and the victim was transported to Vanderbilt Hospital. He underwent 10 hours of surgery on his leg.

At the conclusion of the trial, the Rutherford County Circuit Court jury convicted Defendant of the lesser-included offense, aggravated assault, and acquitted him of employing a handgun during the commission of a dangerous felony.

At sentencing, the victim testified that he still experienced pain from the gunshot wound. He endured a month-long recovery from surgery and was unable to work for three months. As a plumber, his job required him to "scoot, bend, kneel, and sometimes climb[,]" and he now had "difficulty doing all of this."

Mrs. Pitts testified that she and Defendant had two kids and four grandchildren. She explained that Defendant spent as much time as he could with his grandchildren. Mrs. Pitts said that Defendant was in a motorcycle accident in 2007 and had long-term injuries to his right leg. Defendant also suffered from asthma. Mrs. Pitts testified that Defendant had not drunk alcohol since July 16, 2019. Defendant took biweekly drug and alcohol screens and wore a GPS monitoring bracelet. Isabella Williams testified that she had known Defendant and Mrs. Pitts for 30 years. She described Defendant as "a real nice guy" and stated that he had "always been very friendly and helpful."

The trial court considered the parties' arguments, the evidence, the presentence report, and the purposes and principles of sentencing. The trial court applied two enhancement factors and no mitigating factors. The trial court considered judicial diversion and probation. After making the relevant considerations, the court denied judicial diversion and full probation. The trial court sentenced Defendant to the maximum within-range sentence of six years and ordered a sentence of split confinement, with one year of incarceration and the remaining five years on supervised probation.

Defendant timely appeals.

*Analysis*

On appeal, Defendant raises three sentencing issues. Specifically, that the trial court abused its discretion in denying judicial diversion, that the trial court abused its discretion in denying full probation, and that the trial court abused its discretion in imposing the maximum within-range sentence of six years. The State responds that the

trial court properly denied judicial diversion and full probation and properly sentenced Defendant to six years.

*Standard of Review*

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The same standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see also State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014) (applying the same standard to judicial diversion). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

*Judicial Diversion*

Defendant contends that the trial court abused its discretion in denying judicial diversion. The State responds that the trial court considered the relevant factors and properly denied judicial diversion.

Judicial diversion is a "legislative largess" granted to certain qualified defendants whereby the judgment of guilt is deferred and the defendant is placed on probation. *King*, 432 S.W.3d at 323; *see* T.C.A. § 40-35-313(a)(1)(A). Once a defendant who is placed on diversion successfully completes probation, the charge will be dismissed. T.C.A. § 40-35-313(a)(2). A "qualified defendant" is a defendant who is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; is not seeking deferral for an offense committed by an elected official; is not seeking deferral for a sexual offense; has not been convicted of a felony or a Class A misdemeanor previously and served a sentence of confinement; and has not been granted judicial diversion or pretrial diversion previously. T.C.A. § 40-35-313(a)(1)(B)(i). The decision of whether to grant judicial diversion is left to the trial court's discretion. *King*, 432 S.W.3d at 323. The defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. *State v. Faith Renea Irwin Gibson*, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999) *State v. Baxter*, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)), *no perm.*

*app. filed*. "There is no presumption that a defendant is a favorable candidate for judicial diversion." *State v. Dycus*, 456 S.W.3d 918, 929 (Tenn. 2015)

Although the deferential standard of review articulated in *Bise* applies to the decision to grant or deny diversion, the common law factors which the trial court has long been required to consider in its decision have not been abrogated. *King*, 432 S.W.3d at 326. Accordingly, in determining whether judicial diversion is appropriate, a trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (footnote omitted). In addition to considering these factors, the trial court must weigh them against one another and place an explanation of its ruling on the record. *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

If the trial court has adhered to these requirements, the reviewing court merely looks to see whether "any substantial evidence" exists in the record to support the trial court's decision. *Id.* "Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this Court must apply a presumption of reasonableness and uphold the trial court's decision so long as there is any substantial evidence to support the decision. *King*, 432 S.W.3d. at 327. The trial court need not "recite" all of the factors, but the record must reflect that it considered each factor, identified the specific factors applicable to the case, and addressed the relevant factors. *Id.* "'[A] trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration.'" *State v. Walter Townsend*, No. W2015-02415-CCA-R3-CD, 2017 WL 1380002, at *2 (Tenn. Crim. App. Apr. 13, 2017) (quoting *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997)), *no perm. app. filed*.

The record indicates that the trial court considered the evidence, the presentence report, and the purposes and principles of sentencing. The trial court applied little weight in favor of judicial diversion to the presentence report, Defendant's physical condition, mental condition, and social history. The court found that the facts and circumstances

surrounding the offense and the nature and circumstances of Defendant's conduct weighed heavily against judicial diversion. Specifically, the court stated that Defendant was "intoxicated, carrying a firearm that he carried all the time and resulted in shooting [the victim]" as the victim turned away.

The court weighed Defendant's lack of criminal history in favor of judicial diversion. Regarding Defendant's previous actions and character, the court noted some positive testimony from the sentencing hearing and some negative testimony from the trial. The court stated that the testimonies offset each other and therefore it found this factor to be neutral. The court "d[id not] doubt" Defendant could be rehabilitated and would likely comply with the terms of his probation, but applied little weight to those factors.

The court acknowledged that Defendant had complied with his bond conditions over the previous two and a half years, but applied little weight in favor of judicial diversion. The court considered whether a sentence of judicial diversion would unduly depreciate the seriousness of the offense and weighed that factor against judicial diversion. The court stated, "This was a serious offense. . . . [T]he fact is that perhaps years of arguments back and forth, as much given from [the victim] as [Defendant], what it resulted in is [Defendant] shooting his neighbor while he was drunk." Without providing specific reasoning, the court found that whether confinement was particularly suited to provide an effective deterrent to others likely to commit similar offenses weighed slightly against judicial diversion. The trial court acknowledged that it did not find Defendant's offense particularly "enormous, gross, or heinous."

In denying judicial diversion, we note that the court thoughtfully placed its analysis on the record and provided substantial evidence to support its conclusions. The court did not abuse its discretion in denying judicial diversion. Defendant is not entitled to relief.

*Probation*

Defendant argues that the trial court abused its discretion in denying him full probation. The State responds that the trial court properly sentenced Defendant to split confinement.

"A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less," with some exceptions. *See* T.C.A. § 40-35-303(a). In determining whether confinement is appropriate, the trial court should consider the following principles:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C). Additionally, the sentence imposed should be (1) "no greater than that deserved for the offense committed[,]" and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" T.C.A. § 40-35-103(2), (4). The trial court may also consider the *Electroplating* factors in determining whether to impose a sentence of probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citing *Electroplating, Inc.*, 990 S.W.2d at 229).

Generally, to deny alternative sentencing solely on the basis of the seriousness of the offense, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). Additionally, in *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), our supreme court noted five factors to consider when denying probation on the basis of deterrence and held that a trial court may impose a sentence of incarceration based solely on a need for deterrence "when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *Id.* at 10-13.

However, in *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014), the Tennessee Supreme Court determined that "the heightened standard of review [from *Trotter* and *Hooper*] that applies to cases in which the trial court denies probation based on only one of these factors is inapplicable" when the trial court "combined the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense."

The trial court analyzed whether to grant judicial diversion and probation in conjunction. Regarding probation, the trial court stated that it was "perhaps the toughest of today's decisions. I've considered everything. I've looked at the probation

considerations." The court found that granting full probation would unduly depreciate the seriousness of the offense. Incorporated into the court's probation assessment through its judicial diversion analysis, the trial court noted, without providing its reasoning, that there was deterrence value to others likely to commit a similar offense. The court also found that the circumstances surrounding the offense were violent and reprehensible and weighed heavily against Defendant. After nearly a year of conflict, Defendant, while intoxicated, shot his neighbor in the leg from behind. The heightened standard of review from *Trotter* and *Hooper* does not apply because the trial court relied on the seriousness of the offense, the need for deterrence, and the nature and circumstances of the offense. We cannot say that the trial court abused its discretion in sentencing Defendant to split confinement. Defendant is not entitled to relief.

*Length of Sentence*

Defendant argues that the trial court abused its discretion in sentencing him to the maximum within-range sentence of six years and that the trial court incorrectly applied enhancement factor (6). The State agrees with Defendant that the trial court improperly applied enhancement factor (6), but contends that the court properly sentenced Defendant.

We agree the trial court improperly applied enhancement factor (6), that the personal injuries inflicted upon the victim were particularly great. *See* T.C.A. § 40-35-114(6). It is well-settled that statutory enhancement factors may not be applied if they are essential elements of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). Serious bodily injury was an element of Defendant's aggravated assault conviction, and thus, enhancement factor (6) cannot be used to enhance Defendant's sentence. *See* T.C.A. § 39-13-102. However, the trial court also relied on enhancement factor (9), that the defendant possessed or employed a firearm during the commission of the offense. *See* T.C.A. § 40-35-114(9). Despite the improper application of enhancement factor (6), the trial court properly applied enhancement factor (9), considered the purposes and principles of sentencing, and imposed a within-range sentence. Accordingly, we conclude the trial court did not abuse its discretion. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE